GUS OTT v. STANDARD CATTLE COMPANY AND ANOTHER.[1]

March 11, 1927.

No. 25,597.

**Finding of industrial commission on conflicting evidence conclusive in this court.**

In this claim under the workmen's compensation act, the finding that the accident to the employe caused no "disablement" was made on conflicting testimony and cannot be disturbed on appeal.

Workmen's Compensation Acts—C. J. p. 123 n. 41, 45.

Certiorari on the relation of the plaintiff to review an order of the industrial commission denying compensation in a proceeding under the workmen's compensation act.    Affirmed.

*George H. Gerlich,* for relator.
*Bundlie & Kelley,* for respondents.

HOLT, J.

Certiorari to review the decision of the industrial commission denying compensation to relator, Gus Ott.

Ott "suffered an accident arising out of and during the course of" his employment of which the employer had due notice, according to the findings of the commission.    However, this finding, precluding compensation and here challenged, was made:    "That by reason of said accident said employe did not suffer any disablement."    The claim presented was for temporary total disability.

[1]Reported in 212 N. W. 813.

The accident occurred on February 13, 1925, in the South St. Paul stockyards when an icicle from the rim of a water tower, at the height of about 25 feet, fell upon relator's head as he, in the course of the employment, was passing underneath. He staggered to a fence on which he leaned for a few moments. Another person nearby who did not see the ice strike Ott saw him stagger and hold onto the fence, deemed him drunk, but on approaching saw blood on his face and lifting the cap found blood on the skull. It does not appear how large the piece of ice was, but it had force enough to cause an abrasion on top of his head sufficient to draw blood. Being bald Ott was wearing a chamois skull cap under a heavy woolen cap. No scar from the bruise was visible on March 3 following when examined by the physicians of the insurer. His own doctors as well as those of the insurer advised him to go to work. He claims that he was also anxious to do so, but suffered from dizziness, nausea and severe headaches to an unbearable extent, and lost nearly 50 pounds in weight. Testimony was adduced tending to show subsequent mental aberration and total loss of hearing in the left ear. He was for eight days at a hospital for observation in April and in September went through the Mayo clinic, after which on the 14th of that month he went to work at a lighter and less remunerative job than the one engaged in before the accident.

In the application for compensation, made March 30, 1925, the result of the accident was stated to be "severe laceration of the scalp—concussion of the brain." The hearing was set for May 22 but over the objection of the insurer a continuance was granted, so that not until October was the case heard and decided. After the appeal had been taken from the referee's decision, relator obtained leave to introduce additional testimony, and from medical experts came an abundance of additional evidence in the way of tests, observations and opinions.

There can be no denial of the fact that relator met with an accident in his employment which inflicted a physical injury to his body, for he received a slight abrasion on top of his head and there was also some testimony that blood issued from the left ear and the nose.

But the question in dispute is whether the accident in fact disabled relator from continuing in his usual work. He was earning $35 a week when injured and $30 at the time of hearing. What he earned or was able to earn between February 13 and September 14, 1925, does not appear.

Doctor Drechsler, on whose testimony the chief reliance for compensation is placed, gave a certificate to the insurer on March 10 stating that he had first examined Ott on February 18, describing the wound on top of the head, saying there was some lack of strength on the left side of the body and giving the opinion that he would be able to resume his usual work in 30 days. On March 22 he certified that Ott would be able to return to work within a week. Later he sent him to a hospital for observation, there having appeared symptoms which might be ascribed to a severe concussion of the brain. The results of the hospital stay so far as discovering any physical ailment were negative. Shortly after this Ott applied to the University dispensary for treatment and Dr. Dvorak, graduated in 1921, diagnosed his condition as concussion syndrome or traumatic neurosis. He treated him from April 13 to September 9. His findings as to any ailment were negative so far as objective matters were concerned, except an extreme nervousness and loss of weight. Not until after the referee had decided against relator, was any serious claim made of loss of hearing in the left ear.

Had compensation been awarded it might well have been sustained in some amount. But such conclusion does not dispose of the appeal. It is well settled that the burden is upon the employe to prove not only that an accidental injury was received in the employment but the extent to which he thereby was incapacitated and deprived of his usual wages. As to those fact questions the finding of the commission stands upon the same footing on appeal as does the finding of the court or jury in the ordinary civil action. In paragraph 5 of the opinion in Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635, the authorities on this point are quite fully cited. Dr. Lowe, the physician whom Ott consulted the day after the accident, was of the opinion that the injury was trivial. He also saw him on February 20 and 22 when he examined him more

thoroughly, and again concluded that he was able to do his usual work. Drs. Sweeney and Ruhberg examined Ott on behalf of the insurer on March 3 and on May 22. Dr. Ruhberg, in connection with Drs. Hammes, Hengtsler, Larson and Warren, examined him on January 30 and on February 5, 1926. These were all specialists either of nervous troubles or ear troubles. So far as loss of hearing goes there was no claim of an injury in that respect when Ott was examined by the doctors for the insurer, and only a hint of any trouble with the hearing is found in the testimony presented to the referee. And when the loss of hearing of the left ear was claimed in the application to take additional testimony, after the appeal to the commission, and the subsequent examinations and tests were had in January and February, 1926, the medical experts for the insurer not only concluded that Ott refused to co-operate in the tests necessary to determine whether or not there had been a destruction of the auditory nerve, the eighth nerve, to the left ear, but that he was feigning deafness therein. The medical experts for Ott testified to total loss of hearing in the left ear, but admitted doubt, because finding no plausible reason why, if it resulted from the accident, it did not manifest itself at once. That is, if the concussion was severe enough to cause total deafness it severed or destroyed the nerve at the time of the accident and there would be no gradual deterioration. It is plain that in this condition of the testimony, as to the claimed loss of hearing, we cannot disturb the finding that the accident produced no disablement.

As to the claim that the accident caused concussion syndrome or traumatic neurosis, the medical witnesses are at variance. Even the doctors called by Ott admit that most of the symptoms on which they must rely are subjective. And no more positive opinion was ventured than that the nervousness, dizziness and headaches of which he complains could or might result from the blow on the head. So far as Dr. Drechsler's opinion is concerned it is much weakened by the certificates given shortly after the accident and above alluded to. Dr. Campbell's testimony did not aid Ott. Dr. Berrisford, an eye, ear and throat specialist, gave testimony which if accepted by

the triers of fact would have justified a finding not only of loss of hearing, but of mental aberration and disability caused by the blow from the icicle. However, the concensus of opinion of the array of doctors named above who testified in behalf of the insurer was that the accident did not disable Ott from pursuing his calling, and some of them also testified to facts tending to prove that Ott simulated in respect to his condition. If the triers of fact became satisfied that Ott wilfully attempted to mislead the medical experts, there remained very little upon which to predicate an award for compensation. If his subjective symptoms were not truly stated by him, and they had to be so stated to the doctors when tests were applied and when their opinions would have to be based thereon, the conclusions they would form would be of no value, save as the falsity could be detected. At any rate there was such conflict here as to the result of the blow from the falling icicle that the commission's finding of "no disablement" cannot be disturbed by us.

The decision is affirmed.